The first case this morning is Cooper v. Pasadena Unified School District. Good morning. May it please the Court, Catherine Davis for appellant, Dean Cooper. There are several issues in this appeal, given the limited time I have this morning. I'd like to focus on just two, the disability discrimination claim and the exhaustion issue. The primary issue presented in this case is whether Mr. Cooper reduced sufficient evidence to establish a prima facie case and overcome summary judgment on his disability discrimination claim. This Court has recognized that where plaintiff relies on more than just the McDonnell-Douglas presumption and produces direct or circumstantial evidence of discrimination, very little evidence is required to survive summary judgment and a question of fact almost always exists. This Court has also recognized that when plaintiff produces direct evidence of discrimination, the question of fact as to intent necessarily exists. Indeed, even a single derogatory comment by a supervisor or a decision maker suggesting a discriminatory motive can be sufficient. Moreover, even if an employer's proffered reasons are legitimate or true, if a jury could reasonably conclude that discrimination was at work, summary judgment is not warranted. Here, Cooper respectfully submits that the record contains both direct evidence of bias and circumstantial evidence of pretext. Specifically, the record shows that even before Cooper applied for the College of Teachers position, the person in charge of personnel at the district, Mary Edda Palmer, expressed bias against Cooper on the basis of his disability and on his perceived need for reasonable accommodation. Specifically, the record contains two examples of direct evidence of bias. First, Palmer's unprompted statement made immediately after Cooper sustained his disabling injury that you are not going to get a promotion from this. Let me ask you, his complaint is that he should have gotten a certain position. All right, that's fair enough, but in getting this position, it wasn't the targets that you mentioned that gave him, that turned him down. It was a separate board. And I didn't find any evidence that the targets had influenced that board. There were some may-haves in there. Why doesn't that decide the case for us as far as that position is concerned? Well, Your Honor, our position is that the direct evidence of Dr. Palmer's bias combined with the circumstantial evidence that the district was attempting to terminate Mr. Cooper at the very same time that he was applying for the position. Well, that's well and good, but where's the evidence that this independent board was biased against your client and didn't recommend him, he didn't make the cut? Where's that evidence? The record is undisputed that the outside screeners were unaware of Mr. Cooper's disability. That is true. Our position, with respect, is that the fact that the outside screeners were unaware of his disability doesn't necessarily preclude a question of fact when you have a record such as this, when you have a decision-maker in a position of authority who's expressing biased remarks on the basis of a disability, and you have evidence that the district, at the very same time he's applying for the position, had already determined that there were no jobs available for him. But where's the evidence connecting the two? Well, our position is that the question of fact is in the very fact that one can't preclude the other. Well, let's assume for sake of argument that this independent board was not tainted and he didn't make the cut, he didn't know about the disability, they just said he wasn't qualified and he set aside. That was the decision that was made. Now, how has that changed? It seems to me that that's where the decision is, that there has to be some tie between the alleged bias and that board's decision, which I don't find in the record. Well, again, our position is simply that the circumstantial evidence does create a question of fact. And furthermore, I believe that this Court has recognized that when a decision-maker or a person in a position of authority with respect to employment actually makes a biased remark, that the question of whether they are involved in the ultimate decision-making process is a question of fact. And in the Dominguez case, I believe that this Court actually held that even if that supervisor is not involved in the ultimate decision, that it can be sufficient to survive summary judgment, even if the ultimate decision-maker was not biased. So I believe that the evidence in the case does call into question the veracity of the stated rationale that this decision was strictly made by outside screeners. They had told him basically two weeks before he even applied that there was no job for him and his benefits would be terminated. Two days after Dr. Palmer confirmed receipt of his application, the district lawyer sent Mr. Cooper a letter saying there are no jobs for you, and if you don't resign, we're going to fire you. And in fact, they did fire him on the basis of his disability because he couldn't classroom teach. So if you look at the proximity of events and the timing of how the termination proceedings were initiated, I believe that it's reasonable to conclude that the proffered rationale that this so-called outside screener rejected his application independently doesn't hold up. We also did proffer evidence that created a question of fact with respect to those stated rationales. For example, there was evidence in the record that Mr. Cooper's application was in fact complete, that he did submit the requisite letters of recommendation, that he did meet the minimum requirements. And in fact, those two outside screeners gave Mr. Cooper above average scores on both training and experience. So not only do we believe the record creates a question of fact more generally with respect to pretext and intent, we pointed to evidence in the record that undermines the stated rationale that those screeners, those so-called outside screeners, employed in rejecting his application. Counselor, since you brought up the termination proceedings, and you also said that you were going to talk about exhaustion, it seems to me maybe we could go there. I've read through the papers that went to the EEOC, and frankly the first, if you will, record is that it dealt with not getting the coordinator position, and the second one dealt with the evaluation process from Los Angeles. I didn't find anything in there, and I guess I'm trying to find, where do I find anything dealing with being terminated? The EEOC record doesn't seem to give any idea that he even was complaining about that, so why did he not have, why was he not outside of what the court could do? Yes, Your Honor. As this court knows, the test for this question is whether the allegations that are not expressed in the charge are like or reasonably related to the express allegations, and also whether it is likely that the EEOC investigation would have reasonably discovered the excluded allegations, so that even if the claims in the complaint regarding termination are not expressly included in the charge, so long as they're reasonably related or could have reasonably grown out of the EEOC investigation, this court will consider those claims to have been exhausted. Well, would you look at the record and point to me where in the record you're going to find the EEOC able to find where we can deal with termination proceedings? I mean, I have really looked over this record that was sent to the EEOC, and I frankly didn't find anything there. Yes, Your Honor. And so I'm trying to figure out how the EEOC would have had any idea that he was complaining about termination proceedings or even been able to investigate it. Yes, Your Honor. Well, the complaint itself does allege bias between February 1996 and July 1997. I'm sorry, ER 18, 17-month period. In fact, the termination didn't happen until one week after Mr. Cooper filed this complaint, filed the charge. So there's no way, as a matter of fact, he could have included the termination proceedings in this charge. Are we talking in 97? Yes, correct. 97, ER 18, he filed in October 14, 1997. And October 21 is when the termination proceedings were initiated. This court has held that even allegations of incidents occurring after the charge and during the pendency of the investigation will be exhausted if they're reasonably related. The theory of the case here is that he was not hired because he was in the process of being fired, and the district had already determined there were no jobs for him. Mr. Cooper couldn't possibly have included the termination proceedings because they happened a week later. Also, the demand, the May 14th, I'm sorry, the June 18th demand that he resign or face termination did happen within that 17-month period between 96 and July 97, so it's reasonable that the EEOC would have discovered that demand and would have inquired what happened after you didn't get this job. He had been a district employee for 10 years, and our position is it's very reasonable to assume that the EEOC would have investigated it. I see I have 30 seconds left. I'll just end with the court's permission on the point that even if the court finds that these are not exhausted, to the extent these claims also fall within the Rehabilitation Act claims. As the court is aware, Mr. Cooper brought claims both under ADA and Rehabilitation Act. Rehabilitation Act does not require administrative exhaustion as a prerequisite to suit before the district court. However, that is subject to the discretion of the district court, is it not, in that area? I am not aware that that's the case, Your Honor. My understanding is that's the law of the circuit. The question was not raised. So it's at this court's discretion. Thank you. Good morning. May it please the Court. Duncan McCrary for Appellee, Pasadena Unified School District. On June 11, 2003, Pasadena Unified School District properly noticed a motion for summary judgment and produced significant evidence to show that the decisions made relating to appellant's employment were non-discriminatory and non-retaliatory. As laid out in the papers at the trial court level, Pasadena Unified School District did not accept Mr. Cooper's application because it was deficient. As the court has pointed out this morning, both of the screeners in the process were not Pasadena Unified School District employees. Pasadena Unified School District also established at the trial court level that the screeners had no contact with Pasadena Unified at all during the screening process, and therefore they were not aware of Mr. Cooper's disability. They were hired, though, by the person who had drafted the discriminatory note. Why isn't that enough to impute her animus to the screeners? Yes, Your Honor. I believe it's fairly well-settled case law under Price-Waterhouse-Coopers v. Hopkins, a U.S. Supreme Court decision, that stray comments by a decision-maker not in the decisional process does not provide the basis for animus in a discriminatory context. Therefore, I believe that that comment should be not considered at all when making the decision whether or not any of the decisions made by Pasadena Unified School District were on the basis of Mr. Cooper's disability. There is also no other evidence other than that stray comment that there was any type of consideration of Mr. Cooper's disability at all in the record before this Court, and that's why the Court should not consider that comment when making its decision here today. Why don't we deal with this record that we have in front of us? The judge evidently made his decision based generally on something I suspect you or one of your associates sent him, and he crossed out some things and didn't cross out other things. And I guess I worry about this order to some extent. It always happens when we cross out things. Where does this order deal with the termination proceedings? Your Honor, I do not believe it does deal with the termination proceedings. Well, if it doesn't deal with the termination proceedings, why shouldn't I send it back for him to deal with that? Your Honor, as Pasadena Unified School District argued at the trial court level and also as we argued before this Court, we believe that Mr. Cooper failed to exhaust his administrative remedies in the EEOC complaint. How do I know that? How do I know the judge thought that? Your Honor, I don't. I mean, I look at his order. I'm trying to find out where in the record would we have any idea of why he didn't want to deal with the termination proceedings regarding the ADA or regarding the Rehabilitation Act. There's nothing in there that says what he did or he didn't do, and I have a tough time knowing then how to affirm him or not. It always happens when we cross out things and we don't put everything we're thinking, but I haven't looked in the record otherwise to find and couldn't find anything. Your Honor, the way I understood the record and the order from the trial court was that the trial court found that they had failed to exhaust. Your Honor, I'm not exactly, I'll be honest with you, I'm not entirely familiar with the order right now. I don't remember it right off the top of my head. I apologize to the court. The way I understood the order at the time of drafting our brief was that the trial court had found that the appellant had failed to exhaust his administrative remedies when filing those EEOC complaints. He had not referenced the termination proceedings at all, and I know the trial court did strike out some things. I do remember that, but I did not have a chance to review that order. I apologize to the court. Could you explain why he doesn't have a Rehabilitation Act claim since there is no exhaustion requirement for that? Didn't the district court err in dismissing that? Your Honor, I have done research regarding that, and I believe that federal employees are required to exhaust their remedies, but I must concede that, according to my research, that there is not a requirement for non-federal employees to exhaust their remedies in regards to the Rehabilitation Act. So you're conceding that there was no need to exhaust for the Section 504 of the Rehabilitation Act? Your Honor, only as to the disability discrimination claim. I am not aware of any case law that would require that or anything that would preempt it. Well, let's assume that the district court found that both the ADA and RA needed to be exhausted. We now find out that the RA doesn't have to be exhausted. Counsel could have raised this before the district judge, and maybe the issue would be taken care of, but when it's raised for the first time on appeal, we ordinarily don't address it except uncertain circumstances, which we've outlined in our case law. And I suppose the issue of whether, from your perspective, whether or not the trial court could be affirmed on this issue would determine whether or not it meets those standards. One of them is it is purely a question of law. Do you agree that that's true? That it is purely a question of law? Yes. I don't know whether or not I agree with that statement, Your Honor, respectfully. I believe that the record was not developed in that area, and therefore my claim is prejudiced at some level by failing to. You're skipping over whether or not it's a question of law and going to one of our other tests, which has to be whether or not the record is fully developed. Okay. If you want to go that direction, then tell me why it wasn't fully developed. Well, Your Honor, I believe that it was not fully developed because trial counsel did not perceive that as having been exhausted, and therefore neither trial counsel, to my knowledge, developed a record as to the circumstances surrounding the wrongful termination claim. Your Honor. This was a summary judgment, correct? That is correct, Your Honor. Okay. Well, counsel, Judge Wallace points out very serious problems for me, and as I read the record, it seemed to me that he limited the claims in his decision to the ones in the orders, but he gave no reason for limiting the claims to the ones in the orders, and therefore, given that one might or one certainly has to deal with the ADA and the rehabilitation claims as determination, and I can't find out what he does, how do I know whether to affirm or not, even based on the exceptions that might come under the circuit legal basis? I can't find them. That's my worry. Right. Your Honor, as to the ADA, we believe that the case law is fairly clear that the appellant was required to exhaust prior to bringing his civil complaint in district court, and both of them. But the judge didn't even say that. He just limited the claims and then talked about other claims. He did not talk about wrongful termination in any of his order. Right. He didn't even say it was on exhaustion basis. Your Honor, the way I understood the order was that he was granting us to the exhaustion basis for both the ADA claims and the Rehabilitation Act claims. That's the way I read the order. Yeah, for the coordinator position and for the evaluation at Los Angeles, but he never talked about the wrongful termination at all. Right. Now, the wrongful termination claims were never referenced in either one of those EEOC complaint orders. I feel as though I'm not answering the Court's question, but it was never referenced, and therefore I believe by I know that the argument was Mr. Cooper did not raise the wrongful termination proceedings in either the 1997 or the 1999 claims. And our argument was he had failed to exhaust as to the wrongful termination proceedings, Your Honor, and therefore he would be precluded under the ADA rules. That's the way I understood the Court's order. And therefore the only thing that would be left would be the Rehabilitation Act, if the Court would find that it was a question of law and the Court erred. Thank you. Thank you. This case is submitted. I think she has. Did you have a little bit of time? Okay. Ms. Davis, Ms. Davis, I understand you're here as a pro bono counsel responding to the Court's request for assistance. This is, in our judgment, in the highest traditions of lawyers, and we want to compliment you on doing this for us. We thought this needed to be ventilated by competent attorneys on both sides, and you've lived up to everything that we'd hoped when we developed this program. We thank you for your service. We know that you're not being paid for this, but you can at least go back with the appreciation of the Court of Appeals.  Thank you very much, Your Honor.
judges: Wallace, Ikuta, Smith